UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CITIMORTGAGE, INC., | Case No. 2:16-CV-610 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| TIERRA DE LAS PALMAS OWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff CitiMortgage, Inc.'s ("CMI") motion for summary judgment. (ECF No. 24).[1] Defendant Marshall Family Trust ("MFT") filed a response (ECF No. 27), to which CMI replied (ECF No. 28).

I.     **Facts**

This case involves a dispute over real property located at 5143 Marshall Island Court, North Las Vegas, Nevada 89031 (the "property"). (ECF No. 1 at 2).

On May 5, 2006, Lakeshia Spencer obtained a loan from Countrywide Home Loans, Inc. in the amount of $164,000.00, which was secured by a deed of trust recorded on May 15, 2006. (ECF No. 1 at 3). On December 13, 2011, the deed of trust was assigned to CMI via an assignment of deed of trust. (ECF No. 1 at 3).

On October 7, 2011, defendant Absolute Collection Services, LLC ("ACS"), acting on behalf of Tierra De Las Palmas Owners Association (the "HOA"), recorded a notice of delinquent assessment lien, stating an amount due of $816.71. (ECF No. 1). On February 10, 2012, ACS

---

[1] CMI incorrectly refers to "BANA" throughout its motion. The court will assume that CMI meant to refer to "CMI" and not "BANA," as BANA is not a party to the instant action.

James C. Mahan
U.S. District Judge

1    recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an
2    amount due of $1,696.98.  (ECF No. 1).

3        On February 17, 2012, CMI requested a ledger from the HOA through its agent ACS,
4    identifying the super-priority amount allegedly owed, but the HOA refused to respond.  (ECF No.
5    1).

6        On December 7, 2012, ACS recorded a notice of trustee's sale, stating an amount due of
7    $3,315.30.  (ECF No. 1).  On May 14, 2013, the HOA foreclosed on the property.  (ECF No. 1).
8    Defendant MFT purchased the property for $6,500.00.  (ECF No. 1).  A trustee's deed in favor of
9    MFT was recorded May 16, 2013.  (ECF No. 1).

10       On March 18, 2016, CMI filed the underlying complaint, alleging four claims of relief: (1)
11   quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the
12   HOA and the ACS; (3) wrongful foreclosure against the HOA and ACS; and (4) injunctive relief
13   against MFT.  (ECF No. 1).  The court later dismissed claims (2) through (4).  (ECF No. 29).

14       In the instant motion, CMI moves for summary judgment in its favor on the quiet title
15   claim.  (ECF No. 24).

16   **II.    Legal Standard**

17       The Federal Rules of Civil Procedure allow summary judgment when the pleadings,
18   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
19   show that "there is no genuine dispute as to any material fact and the movant is entitled to a
20   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is
21   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,
22   323–24 (1986).

23       For purposes of summary judgment, disputed factual issues should be construed in favor
24   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be
25   entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts
26   showing that there is a genuine issue for trial."  *Id.*

27       In determining summary judgment, a court applies a burden-shifting analysis.  The moving
28   party must first satisfy its initial burden.  "When the party moving for summary judgment would

**James C. Mahan**
**U.S. District Judge**

bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

1    justifiable inferences are to be drawn in his favor." *Id.* at 255.   But if the evidence of the

2    nonmoving party is merely colorable or is not significantly probative, summary judgment may be

3    granted.  *See id.* at 249–50.

4    **III.    Discussion**

5            Under Nevada law, "[a]n action may be brought by any person against another who claims

6    an estate or interest in real property, adverse to the person bringing the action for the purpose of

7    determining such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require

8    any particular elements, but each party must plead and prove his or her own claim to the property

9    in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v.*

10   *Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

11   marks omitted).  Therefore, for plaintiff to succeed on its quiet title action, it needs to show that

12   its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*,

13   918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff

14   to prove good title in himself.").

15           In the instant motion, CMI argues that summary judgment in its favor is proper because

16   the statute at issue is unconstitutional, it "offered" to tender the superpriority amount, the

17   foreclosure sale was commercially unreasonable, and *SFR Investment Pool 1 v. U.S. Bank*, 334

18   P.3d 408 (Nev. 2014) ("*SFR Investments*") should not be applied retroactively.  (ECF No. 24).

19   The court will address each in turn.

20           **A.  Due Process**

21           CMI argues that the HOA lien statute is facially unconstitutional because it does not

22   mandate notice to deed of trust beneficiaries.  (ECF No. 24 at 5).  CMI further contends that any

23   factual issues concerning actual notice is irrelevant pursuant to *Bourne Valley Court Trust v. Wells*

24   *Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*").  (ECF No. 24 at 8).

25           The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a

26   HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively

27   requested notice, facially violated mortgage lenders' constitutional due process rights.  *Bourne*

28   *Valley*, 832 F.3d at 1157–58.  The facially unconstitutional provision, as identified in *Bourne*

**James C. Mahan**
**U.S. District Judge**

- 4 -

*Valley*, exists in NRS 116.31163(2).  *See id.* at 1158.  At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk.  *See id.*

To state a procedural due process claim, CMI must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  CMI has satisfied the first element as a deed of trust is a property interest under Nevada law.  *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale").  However, CMI fails on the second prong.

Due process does not require actual notice.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).  Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right.  CMI does not dispute that it received adequate or actual notice of the foreclosure sale.  Rather, CMI merely argues that whether it received actual notice is irrelevant based on CMI's misinterpretation of *Bourne Valley*.

**B.  Offered Tender**

CMI argues that it offered to pay the superpriority amount of the HOA lien and that under *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911 (Nev. 2016) ("*Stone Hollow*"), CMI's offer discharged the superpriority lien.  (ECF No. 24 at 8).

The court disagrees.  The *Stone Hollow* court held that "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien."  382 P.3d at 911.  Here, CMI did not tender any amount to the HOA/ACS.  Rather, according to defendants' motion, CMI merely "offered" to pay the superpriority portion of the HOA's lien.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.

James C. Mahan
U.S. District Judge

- 5 -

*See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues *and maintenance and nuisance-abatement charges*," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

CMI merely presumed, without adequate support, that the amount set forth in the notice of foreclosure sale included more than the superpriority lien portion and that a mere "offer" to pay was sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

On February 10, 2012, ACS recorded a notice of default and election to sell, stating an amount due of $1,696.98. On February 17, 2012, CMI requested a ledger from the HOA through its agent ACS, identifying the superpriority amount allegedly owed, but the HOA refused to respond. Rather than tendering the $1,696.98 due so as to preserve its interest in the property and then later seeking a refund of any difference, CMI elected not to pay any amount and to merely offer to pay a lesser amount based on its unwarranted assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had CMI paid the amount set forth in the notice, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

James C. Mahan
U.S. District Judge

- 6 -

After failing to use the legal remedies available to defendants to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—CMI now seeks to profit from its own failure to follow the rules set forth in the statutes.  *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Based on the foregoing, CMI has failed to sufficient establish that CMI tendered any amount prior to the foreclosure sale so as to render MFT's title subject to CMI's deed of trust.

### C.  Commercial Reasonability

Next, CMI argues that the HOA and ACS conducted a commercially unreasonable sale. (ECF No. 24 at 13).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada.  *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410.  Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[2]

_____

[2]  *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill*

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite CMI's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state,

---

*Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

"every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, CMI fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. CMI relies on its repeated assertion that CMI offered to pay the superpriority amount to show fraud, unfairness, or oppression. However, as discussed in the previous section, merely offering to pay the deficiency amount is insufficient to preserve CMI's interest. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, CMI chose not to tender any amount and merely offer to pay the superpriority portion.

### D. Retroactivity

CMI contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 24 at 20).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

### IV.    Conclusion

Based on the aforementioned, CMI has failed to show that it is entitled to judgment as a matter of law on CMI's quiet title claim.

**James C. Mahan**
**U.S. District Judge**

1          Accordingly,

2          IT IS HEREBY ORDERED, ADJUDGED, and DECREED that CMI's motion for

3  summary judgment (ECF No. 24) be, and the same hereby is, DENIED.

4          DATED March 22, 2017.

5

6                                UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**